IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL O. RAFFENSBERGER, | : | CIVIL ACTION NO. **3:CV-03-1767** |
| Plaintiff | : | (Judge Caputo) |
| v. | : | (Magistrate Judge Blewitt) |
| JOANNE B. BARNHART,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Michael O. Raffensberger, is seeking review of the decision of the Commissioner of Social Security ("Commissioner") which denied his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383(f).

**I.    PROCEDURAL HISTORY**

The Plaintiff filed an application for Social Security Disability benefits on June 5, 2002 (R. 67, 83-85), alleging disability since February 26, 2002 (R. 91) due to heart problems, hip pain, degenerative disc disease of the lumbar spine and high blood pressure. (R. 91). His claim was denied, (R. 69-72) and a request for a hearing was filed on December 2, 2002. (R. 73). A hearing was conducted before an Administrative Law Judge ("ALJ") on April 23, 2003. (R. 20, 77). Plaintiff was denied benefits pursuant to the ALJ's decision of June 16, 2003. ( R. 9-19).

The Plaintiff requested review of the ALJ's decision by the Appeals Council on August 6, 2003. ( R. 8). Said request was denied on August 26, 2003 ( R. 4-6), thereby making the ALJ's decision the "final decision" of the Commissioner. 42 U.S.C. §405(g) (1995). That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 13 and 14).

## II.  STANDARD OF REVIEW

When reviewing the denial of Social Security Disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In order to receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is unable to do his previous work but cannot, considering his age, education and work experience,

2

> engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

### III. ELIGIBILITY EVALUATION PROCESS

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b).  The second step involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R. §§ 404.1520(c), 416.920( c).  The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that he is unable to perform his past relevant work. *See* C.F.R. § 404.1520(e), 416.920(e).  The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work.  *Plummer*, 186 F.3d at 428.  Then the burden shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national

economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  This is the final step in the five-step evaluation process, and at this point, the Commissioner is to consider the Plaintiff's stated vocational factors.  *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 9).  In reaching this determination, the ALJ first found that the Plaintiff had not engaged in substantial gainful activity since June 5, 2002, the date he filed his application for SSI benefits.  (R.18).  Further, the ALJ determined that the medical evidence established that the Plaintiff has an impairment or combination of impairments which are severe within the meaning of the Regulations but are not severe enough, either singly or in combination, to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulation No. 4.  (R.18).

The ALJ noted that Plaintiff's testimony regarding his limitations was not totally credible.  (R. 15,18).  When assessing his residual functional capacity, the ALJ found that the Plaintiff has a residual functional capacity for a limited range of light work[1].  (R.16).  Specifically, the Judge found that the Plaintiff could work in sedentary and light occupations in controlled environments that do not involve working around heights, dangerous equipment or bending at

---

[1]  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to ten pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  20 C.F.R. § 404.1567(b).

the waist; and which would allow the Plaintiff to stand or sit at his option and require a moderate level of concentration. (R.16). The ALJ concluded that the Plaintiff was unable to perform his past relevant work as a short order cook, molding machine operator or maintenance person/ supervisor. (R. 13, 18).

At step five the Commissioner had the burden of demonstrating that the Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). According to the testimony of an impartial Vocational Expert ("VE"), the ALJ concluded that there remains a number of jobs in the national economy which the Plaintiff could perform. (R. 19). Thus, the ALJ found that the Plaintiff was not under a disability as defined by the Act at any time through the date of the ALJ's decision. (R. 19).

## IV.   DISCUSSION

The Plaintiff asserts that the Commissioner made several mistakes in reaching his determination. Specifically, the Plaintiff alleges: (1) that the ALJ erred in finding that the Plaintiff did not meet or equal the medical listings set forth in C.F.R. pt. 404, subpt. P, app.1 (2003); (2) that the ALJ improperly substituted his medical opinion for that of the treating physicians; (3) that the ALJ failed to properly assess the combination of the Plaintiff's impairments and instead considered each separately; and (4) that the ALJ erroneously rejected the testimony of the Plaintiff and his wife as not credible, since their testimony was fully supported by objective evidence. The Plaintiff maintains that the decision of the ALJ is not supported by substantial evidence, and that a more balanced review of the record compels the conclusion that he was disabled and therefore, could not perform any substantial gainful activity as of February 26, 2002, the alleged onset date of disability. He requests that this court reverse the decision of the

Commissioner and award SSI benefits to the Plaintiff or, in the alternative, remand this matter back to the Office of Hearings and Appeals for further appropriate evaluation of the medical evidence and testimony. (Doc.13).

### A. WHETHER THE PLAINTIFF'S IMPAIRMENT(S) MEETS OR EQUALS ONE OF THE LISTED IMPAIRMENTS.

The Plaintiff asserts that the ALJ erred in determining that the Plaintiff did not meet or equal the listed impairments contained in Appendix 1, Subpart P of the Social Security Regulations No.4 ("Listings").  He maintains that the ALJ failed to consider 20 C.F.R. § 404.1526 which addresses medical equivalence.  Specifically, Plaintiff asserts that the ALJ erred most egregiously in finding that the Plaintiff did not meet or equal listing 1.04.  (Doc.13, pp.3,7) and/or listing 1.06 (Doc.13, p.3).    20 C.F.R. § 404.1526(a) provides, "if your impairment is not listed, we will consider the listed impairment to decide whether your impairment is medically equal."  "The determination of whether the Plaintiff's impairment(s) is medically equal must be based on medical evidence that is supported by acceptable techniques."  20 C.F.R. § 404.1526(b).  In making a determination as to whether a claimant's impairment meets or equals one of the listings, the ALJ may not merely state a summary conclusion that the claimant's impairments did not meet or equal any listed impairment; she must identify the relevant listed impairments, discuss the evidence, and explain her reasoning.  *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119 (3d Cir. 2000).

Here, in determining that the Plaintiff was not disabled, the ALJ considered each relevant listing, what the listing requires and the medical evidence indicating whether the Plaintiff's impairments met or equaled the requirements of the listing, thereby strictly

following the guidelines set forth in *Burnett*.  Upon such consideration, the ALJ found that although the Plaintiff has an impairment considered severe under the Regulations, these impairments "are not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No.4." (R.14).  Under Social Security Regulations, for a disability claimant to qualify for supplemental security income benefits by showing that his unlisted impairment or combination of impairments is "equivalent" to a listed impairment, he must present medical findings equal in severity to *all* criteria for the one most similar listed impairment.  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  (Emphasis in original).

     The ALJ, upon examination of the results of a three-phase bone scan conducted on February 25, 2002 (R.211), and the consultation report of Dr. Craig A. Sullivan (R. 217), found that the Plaintiff did not exhibit a major dysfunction characterized by gross anatomical deformity or fracture of the hip. (R. 14).  Thus, the ALJ concluded that the Plaintiff did not meet Listing 1.02(A) or 1.06.  (R.14).  The ALJ determined that, although the Plaintiff has lumbar disc disease with mild impingement on the L5 dorsal root with limited motion and positive straight leg raise (intermittently), the medical evidence does not indicate motor loss (atrophy) accompanied by sensory or reflex loss.  (R.146-154, 161-164, 175-192, 254).  The ALJ explained that such motor loss is required by Listing 104.A and that therefore, the Plaintiff's impairments did not meet or equal this Listing.  (R.14).

The ALJ went on to explain that the Plaintiff's blood pressure readings and ejection fractions do not meet Listing 4.02(B). This listing requires evidence of ejection fraction of 30% or less. (R. 210). The medical findings presented by Plaintiff show that the Plaintiff's ejection fraction is 39%. (R. 210). The ALJ found that the Plaintiff's blood pressure readings have varied from 83 (R. 194) to 110 (R. 178-179), and that his hypertension was well controlled as of July 17, 2002. (R.175). Concerning the Plaintiff's diabetes, the ALJ explained that there is no evidence of neuropathy demonstrated by significant and persistent disorganization of motor functions in two extremities. (R.144). Further, he found that the Plaintiff did not present evidence showing any acidosis or retinitis and therefore, the Plaintiff's impairments did not satisfy Listing 9.08. (R. 14). The ALJ determined that while Plaintiff indicated that his impairments met Listing 12.07(A)(3), he failed to produce any objective findings from any source or any medical evidence of subjective complaints establishing the requirements of this listing. (R. 277). Further, the ALJ explained that no medical source designated by the Commissioner has reported that the claimant medically equals a listed impairment. (R. 14).

According to *Sullivan*, "an impairment that manifests only some of those criteria [of the listings], no matter how severely, does not qualify." *Id.* Therefore, while the Plaintiff's impairments may meet some of the requirements of the listings, *Sullivan* indicates that "some" is not enough.

Accordingly, there was substantial evidence for the ALJ to conclude that the Plaintiff's alleged impairments do not meet or equal one of the listed impairments.

### B.   WHETHER THE ALJ IMPROPERLY SUBSTITUTED HIS MEDICAL OPINION FOR THAT OF THE PLAINTIFF'S TREATING PHYSICIANS.

The Plaintiff argues that the ALJ failed to evaluate the extent to which the medical opinions of Drs. Nachtigall and Harcourt were supported by objective evidence in the record. He asserts that the ALJ improperly substituted his medical opinion for that of the Plaintiff's treating physicians.

Under the "treating physician doctrine," greater weight must be given to the findings of a treating physician than to the findings of a physician or medical consultant who examined the claimant only once. *Mason*, 994 F.2d at 1067. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Cruz v. Massanari,* 2001 WL 11559855 *3 (E.D. Pa.), quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Despite this precedent, a treating physician's statement that a claimant is disabled is not binding on the Commissioner. Congress has determined that the Commissioner is solely responsible for deciding whether a claimant has met the Act's statutory definition of disability. 42 U.S.C. §405(b), *See* 20 C.F.R. § 405.1527(e)(1). An ALJ, however, may not reject the opinion of a treating physician, even if it is contradicted by opinions of other doctors, without providing specific and legitimate reasons supported by substantial evidence in the record. *Rollins v. Massanari*, 261 F.3d 853 (9th Cir. 2001).

Here, the ALJ determined that the opinion of Dr. Harcourt, the primary care physician, should be given little weight. (R. 16). The ALJ explained that Dr. Harcourt completed an employability assessment for the Pennsylvania Department of Welfare finding the Plaintiff temporarily disabled from April, 2002 to April, 2004. (R. 266). Dr. Harcourt supported his findings with diagnoses of herniated disc, cardiomyopathy, hypertension and hip pain. (R. 266). However, the ALJ found that there was no evidence of disc herniation on the MRI and that the findings with regard to the hip were "not clinically significant." (R. 16, 154). The ALJ reported that, in fact, the MRI report states that there is no herniation and only mild impingement. (R.15, 154).

Further, medical records support the ALJ's findings that the Plaintiff's hypertension and cardiac status were stable and that the conclusion of disability was inconsistent with the objective findings and degree of treatment for back pain. (R.163, 254, 277).

The ALJ faulted the opinion of Dr. Harcourt, indicating that his report failed to provide a function-by-function assessment of the claimant's work related abilities or limitations that could be useful in determining the Plaintiff's residual functional capacity. (R.16).

It is clear that the ALJ gave deference to the opinion of Dr. Harcourt over the opinions of the other physicians based on the time devoted to his opinion in the ALJ's decision. He determined, however, in light of the stated medical findings and other objective evidence, that Dr. Harcourt's opinion was to be given little weight.

The ALJ also considered the opinion of Dr. Nachtigall, a treating orthopedic surgeon. (R.277). The Plaintiff points out that Dr. Nachtigall interpreted the MRI results to be "consistent with a disc suspect with nerve root irritation." (Doc.13, p.8). However, he does not assert that the doctor diagnosed the Plaintiff with a herniated disc. He merely "asserts that this interpretation suggests that Dr. Nachtigall felt there was a disc problem equivalent to disc herniation... ." (Doc.13, p.9) (emphasis added). A physician's opinion must be consistent with the other evidence of record and well-supported with examination findings and diagnostic studies. 20 C.F.R. §§ 404.1527(d)(3)-(4), 416.927(d)(3)-(4). As stated above, the ALJ determined that the Plaintiff's medical records reflect that he does not have disc herniation. (R.154). Therefore, even accepting the proposition that Dr. Nachtigall believed that the Plaintiff suffered from disc herniation, the ALJ found that the medical evidence did not support such findings. It is clear that the ALJ considered the opinions of both Drs. Harcourt and Nachtigall. However, based on substantial evidence in the record, the ALJ gave them less weight in accordance with the regulations.

### C. WHETHER THE ALJ FAILED TO PROPERLY ASSESS THE COMBINATION OF THE PLAINTIFF'S IMPAIRMENTS.

The Plaintiff next asserts that the ALJ erred in failing to consider all of his impairments in combination. Social Security Ruling 85-28 mandates that "[a]lthough an impairment is not severe, if it has more than a minimal effect of an individual's physical or mental ability(ies) to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered." Thus,

11

even when an impairment is not severe, according to SSR 85-28, "when assessing the severity of whatever impairments an individual may have, the adjudicator must assess the impact of the combination of those impairments on the person's ability to function, rather than assess separately the contribution if each impairment existed alone." The regulations state:

> In determining whether your physical or mental impairment or impairments are of sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. 404.1523.

The Plaintiff asserts that Dr. Harcourt, Plaintiff's treating physician, stated that his combination of hip bursitis, degenerative disc disease, diabetes mellitus, hypertension and cardiac impairments were disabling from April 27, 2002, until April 27, 2004, in a report to the Medical Assistance Office. (Doc.13, p.11). However, as discussed above, the ALJ was not required to accept the opinion of Dr. Harcourt, but merely to give the opinion due deference according to the "treating physician doctrine." The ALJ concluded that Dr. Harcourt's opinion was to be given little weight based on the reasoning discussed above.

Further, the ALJ found that the impairments asserted by the Plaintiff were not supported by objective medical findings. Specifically, the ALJ concluded that there was no evidence of disc herniation on the MRI and findings with regard to the hip were not

clinically significant. (R.154, 211-217). The ALJ also determined that the Plaintiff's hypertension and cardiac status were stable stating that "while the records indicate the claimant has had three catheterizations, there have been no significant abnormalities found and most other testing has been normal." (R.134, 269, 277). Therefore, as the ALJ found that each impairment alleged by the Plaintiff was unsupported by medical findings, substantial evidence existed for the ALJ to find that such impairments cannot be combined to meet or equal a listed impairment.

As to the limitations of the Plaintiff as a result of the combination of his impairments, the ALJ addressed this concern when eliciting the testimony of the VE through hypothetical questions. A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). In *Burns v. Barnhart*, the Third Circuit stated that "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." 312 F.3d 113, 123 (3d Cir. 2002). When an ALJ's hypothetical question to the vocational expert sets forth the plaintiff's limitations as supported by the record, the vocational expert's testimony may be accepted as substantial evidence in support of the ALJ's determination that the plaintiff is not disabled. *Chrupcala,* 829 F.2d at 1276.

The ALJ asked the VE to identify any jobs existing in the national economy that an individual of the claimant's age, education, past relevant work experience and residual functional capacity as determined could perform. (R. 17). The ALJ specifically

13

asked the VE to consider the fact that the Plaintiff was limited to unskilled light and sedentary work; with a sit/stand option; that would not involve more than occasional bending at the waist; and would be performed in a controlled environment as to temperature, humidity, with restrictions from heights or dangerous machinery and would not involve more than moderate concentration or stress. (R.61). According to the hypothetical posed by the ALJ, which addressed each of Plaintiff's limitations, the VE identified the positions of assembler, inspector and packer. (R.61-63). He further testified that in the Harrisburg area alone, there are approximately 1,000 assembly type positions; 1,100 packing positions; and 1,200 inspector positions available. (R.62).

It is clear, based on this information, that the ALJ considered the combination of impairments alleged by the Plaintiff and that substantial evidence existed for the ALJ to determine that there are jobs that the Plaintiff could perform.

### D. **WHETHER THE ALJ PROPERLY FOUND THE TESTIMONY OF THE PLAINTIFF AND HIS WIFE NOT CREDIBLE.**

The Plaintiff argues that the ALJ erred in rejecting the subjective testimony of the Plaintiff and his wife as not credible. Plaintiff alleges that such testimony was fully supported by objective evidence. (Doc.13, p.12). The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. First, symptoms such as pain, shortness of breath, fatigue, *et cetera*, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R.

§404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the Plaintiff's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the Plaintiff's statements. 20 C.F.R. §404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the Plaintiff's statements regarding his symptoms:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms , the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Casias v. Secretary of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility"). *Frazier v. Apfel*, 2000 WL 288246 (E.D.Pa. March 7, 2000).

Here, the ALJ found the Plaintiff's testimony to be credible, but not to the extent alleged and therefore, concluded that the restrictions provided in the hypothetical questions given to the VE contained all of the credible limitations imposed by the

Plaintiff's impairments, separately or in combination. (R.16). As discussed above, the ALJ determined that the Plaintiff's subjective complaints were not consistent with the objective findings. In finding the Plaintiff's testimony concerning back pain to be lacking in credibility, the ALJ determined that although there had been limited motion and positive straight leg raise testing, they had not been persistently present. (R.163-254). There was no evidence of deficits in strength, sensation or reflexes. In fact, the ALJ found that there was no evidence of treatment for back pain since October of 2002. (R.15).

As to the Plaintiff's cardiac history, the ALJ found that the x-ray evidence and catheterization failed to indicate any evidence of infiltrate or congestive heart failure and the EKG was normal as of December, 2002. (R. 15,222-272). The Plaintiff alleged chronic hip pain, yet there have not been significant abnormalities noted on x-ray or bone scans, and physical examination revealed that the hip is neurovascularly intact with good capillary and no sensory deficits. (R.15, 211-217).

Further, no evidence was presented indicating that the Plaintiff reported to any of his physicians the degree of restrictions alleged at the hearing. (R.15). The Plaintiff testified that he suffers from flare ups of asthma and must use an inhaler twice a day, yet there was no evidence of treatment for asthma. (R.15, 175 -253). Despite the Plaintiff's complaints of asthma, he testified that he has a history of tobacco use and continues to smoke even though repeatedly advised to stop. (R.15). At the hearing, the Plaintiff testified that he had quit smoking for about two months but began again because of his nerves. (R.43) He stated that although he had cut back, he continued to smoke about a pack and a half to two packs of cigarettes a day. (R.43)

The Plaintiff's statement that he had not been fishing in two years is also unsupported by the record. The ALJ found that the Plaintiff's back pain worsened when he fell while fishing in April, 2002, approximately two months after the time which he claims he became disabled. (R. 15, 161, 277 ).

As discussed above, the ALJ determined that the Plaintiff's subjective complaints were not supported by objective findings. Accordingly, the ALJ stated that he "does not dispute claimant has some pain and discomfort," but that he "does not find that it reaches such level as to cause claimant to lie down and rest as frequently and as long as alleged in his testimony." (R.16).

Similarly, although the ALJ found the wife's testimony to be truthful, he concluded that her statements were based on subjective signs and symptoms presented by the Plaintiff and not upon objective findings. (R.15). Therefore, inasmuch as the Plaintiff's testimony was found to be unreliable, so too is his wife's testimony because it was based on the same subjective information. It is clear that the ALJ relied on substantial evidence in finding the testimony of both the Plaintiff and his wife to be unreliable.

## V. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal be denied.

                              **s/ Thomas M. Blewitt**
                              **THOMAS M. BLEWITT**
                              **United States Magistrate Judge**

**Dated: October 22, 2004**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL O. RAFFENSBERGER, | : | CIVIL ACTION NO. **3:CV-03-1767** |
| Plaintiff | : | (Judge Caputo) |
| v. | : | (Magistrate Judge Blewitt) |
| JOANNE B. BARNHART,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 22, 2004.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3,  which provides:


Any party may object to a magistrate judge's proposed findings, recommendations
or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

            **s/ Thomas M. Blewitt**
            **THOMAS M. BLEWITT**
            **United States Magistrate Judge**

**Dated: October 22, 2004**